RANDALL L. WINET, STATE BAR NO. 116384
WINET, PATRICK & WEAVER
440 SOUTH MELROSE DRIVE, SUITE 200
VISTA, CALIFORNIA 92081-6666
TELEPHONE: (760) 758-4261

Attorneys for Plaintiff Nichole Burgan

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLE BURGAN,<br><br>Plaintiff,<br><br>vs.<br><br>ESTATE OF LEROY F. KOCHERT and SHARON H. KOCHERT and DOES 1 to 25,<br><br>Defendants. | CASE NO. '08 CV 0185 JAH (POR)<br>ACTION DATE: 01/30/08<br><br>Magistrate Judge: Louisa S. Porter<br><br>**PLAINTIFF NICHOLE BURGAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SETTLEMENT WITH ESTATE OF KOCHERT** |

## I.

## FACTUAL BACKGROUND

This case involves claims for wrongful death brought as a result of a tragic plane crash that occurred on April 29, 2007 in Carlsbad, California. The pilot of the plane, Leroy Kochert, was 70 years of age and flying a Cessna 182Q single engine airplane. The accident occurred at approximately 9:45 a.m. on April 29, 2007 when the plane crashed into the Pacific Ocean. The National Transportation Safety Board determined the probable cause of the accident was the pilot's loss of control due to spatial disorientation. A copy of the NTSB reports are attached to these Points and Authorities as Exhibit "A".

There were three persons on the airplane at the time of the accident. These persons included pilot Leroy Kochert, his wife Sharon Kochert, and his stepdaughter, Alexandria

Meekcoms. All three individuals passed away as a result of the airplane crash.

Sharon Kochert's daughter and only surviving heir is Nichole Burgan. Ms. Burgan brought a wrongful death action against the Estates of Leroy and Sharon Kochert as a result of the April 29, 2007 airplane accident. The action was originally filed in State Court, but then removed by the Estates of Kochert to Federal Court.

A separate wrongful death action has been filed in State Court in Arizona by Raoul Meekcoms. Mr. Meekcoms is the father and sole heir of Alexandria Meekcoms.

The parties attended an Early Neutral Evaluation Conference on April 17, 2008. At that conference, counsel were present for the Estate of Kochert, Nichole Burgan, and Raoul Meekcoms. It was determined that the insurer for the airplane, United States Aircraft Insurance Group (and its affiliates) had denied insurance coverage for the accident. It was further determined that the Estate had limited assets, and the parties engaged in settlement discussions in order to resolve the case.

Following the Early Neutral Evaluation Conference, the parties continued to negotiate settlement with the help of Magistrate Louisa Porter. Nichole Burgan (as heir of Sharon Kochert) and Raoul Meekcoms (as heir of Alexandria Meekcoms) have agreed to a resolution of the case with the Estates of Kochert. This resolution involves a transfer of monetary funds and assets as well as an assignment of rights against the insurance company in exchange for a Covenant Not to Execute.

The settlement is an opportunity for the Estates of Kochert to pay significantly less money than the value of the wrongful death claims and to keep distributable assets with the heirs of the Estates of Kochert. Otherwise, it is anticipated that the assets of the Estates will likely be spent defending the wrongful death litigation and paying the claims of Burgan and Meekcoms.

Burgan and Meekcoms are benefitted by the settlement because they are receiving payments of cash and assets in partial resolution of their claims. However, Burgan and Meekcoms both question the denial of insurance benefits by the airplane insurer, and desire to proceed forward and prove up their cases for damages and to seek those damages against the insurer for the airplane. Thus, as part of the settlement, the Estates of Kochert are assigning all rights to the

insurance policies to Burgan and Meekcoms.

The parties have agreed to the appropriate language for the Settlement Agreement and Covenant Not to Execute. The Estates of Kochert do not wish to incur any additional attorneys' fees and costs as part of the litigation, and do not wish to defend the litigation any further. Therefore, the parties are requesting that the Estates of Kochert be permitted to either withdraw their Answer and allow Burgan to prove up her damages to obtain a judgment, or alternatively, allow the Answer to continue to be on file and permit Burgan to prove up her damages without opposition and obtain a judgment to be asserted in a later action against the airplane insurer.

In summary, Burgan has obtained a Covenant Not to Execute against the Estates, and wishes to obtain a judgment against the Estates to pursue the airplane insurer. The Estates has entered into a settlement whereby the Estates are no longer required to provide a defense and is protected through a Covenant Not to Execute. The parties request that either the Estates be permitted to withdrawn their Answer and allow Burgan to obtain a default judgment, or alternatively, to prove up the case to the court and obtain a judgment without further appearance by counsel for the Estates of Kochert.

## II.

## PLAINTIFF BURGAN IS ENTITLED TO PROVE UP HER DAMAGES AND OBTAIN A JUDGMENT TO BE ASSERTED IN A SEPARATE ACTION AGAINST THE AIRPLANE INSURER

The attorney for the Estates of Kochert has tendered the defense of this litigation to the airplane insurer. The airplane insurer has refused to accept that defense. In California, when an insured (the Estates of Kochert in this case) tender the defense of a lawsuit to an insurer, the insurer has the right and duty to control the defense of any settlement. Hamilton v. Maryland Casualty Co. (2002) 27 Cal.4th 718, 728. However, once the insurer rejects the opportunity to defend the insured and contests liability based upon its position of no coverage under the policy, then the insured may settle with the Plaintiff based upon the best possible terms through taking a Covenant Not to Execute Judgment. Hamilton, supra, at page 728. In this situation, the insured may assign its claims against the insurer to the injured party in exchange for a Covenant Not to Execute. Such assignment can be made "without consent of the insurance carrier, even when the

policy provisions provide to the contrary." Murphy v. Allstate Insurance Co. (1976) 17 Cal.3d 937, 942. In the subsequent action against the insurer, the defenses the insurer was able to assert against its insured are also assertable against the assignee. State Farm Mutual Automobile Insurance Co. v. Davis (9th Cir. 1993) 7 F.3d 180, 183 (applying California law). Thus, the assignee (injured party) takes the assignment subject to the coverage defenses and has no greater right to collect on the policy than the assignor. Ceresino v. Fire Insurance Exchange (1989) 215 Cal.App.3d 814, 822.

Here, the airplane insurer has refused to defend or indemnify the Estates of Kochert. Pursuant to the case law cited above, the Estates of Kochert should not be required to defend the case any further and Burgan should be entitled to prove up her damages and obtain a judgment. Alternatively, the Estates should be permitted to withdraw their Answer and allow Burgan to prove her damages in a default hearing.

Once the judgment is obtained, Burgan will then pursue the insurer directly. If the insurer is correct and there was no duty to defend or indemnify, then Burgan will be unsuccessful in collecting the judgment. Conversely, if Burgan is correct and the insurer had an obligation to defend or indemnify, then the insurer will be responsible for the amount of the judgment. California law provides that an insurer that wrongfully refuses to defend litigation is liable on the judgment against the insured. Samson v. Transamerica Insurance Co. (1981) 30 Cal.3d 220, 236.

In the Samson case, the California Supreme Court recognized the situation that currently exists in the present case. In that case, the Supreme Court stated that where an insurer repudiates its obligation to defend, an insured breaches no duty to the insurance company when he assigns his rights against the company to the injured plaintiffs in exchange for a Covenant Not to Execute. This has been and continues to be the way in which the insured protects itself and the injured party can pursue its rights against the insurer. See Samson v. Transamerica Insurance Co. (1981) 30 Cal.3d 220, 240-241.

In the present case, the airplane insurer has refused to accept the defense of the Estates of Kochert. The Estates have agreed to a settlement with the surviving heirs, Nichole Burgan and Raoul Meekcoms. Since Ms. Burgan currently has a case pending in the Federal Court, and the

parties have agreed to a settlement in exchange for a Covenant Not to Execute or Enforce Judgment, it is respectfully requested that either the court allow Nichole Burgan to proceed forward and prove up her damages in the present litigation against the Estate (for which the Estate will not have counsel present), or alternatively, strike the Answer of the Estates of Kochert and allow Nichole Burgan to prove up damages as part of a default hearing.

Dated: July 30, 2008

WINET, PATRICK & WEAVER

By: ______________________________
Randall L. Winet, Attorneys for
Plaintiff Nichole Burgan

# EXHIBIT "A"

NTSB Identification: **LAX07LA140**.
The docket is stored in the Docket Management System (DMS). Please contact Records Management Division
14 CFR Part 91: General Aviation
Accident occurred Sunday, April 29, 2007 in Carlsbad, CA
Probable Cause Approval Date: 6/30/2008
Aircraft: Cessna 182Q, registration: N97287
Injuries: 3 Fatal.

After takeoff on runway 24, air traffic control instructed the pilot to climb and maintain 5,000 feet, turn to a heading of 060 degrees, and proceed direct to a navigation aid. The pilot acknowledged the controller's instruction. Approximately 2 minutes later, the controller asked what the pilot was doing and there was no response. A witness observed the airplane coming out of the base of a 700-foot overcast cloud layer in a steep nose down attitude just before it impacted the ocean. The airplane and the pilot were not recovered from the water. According to acquaintances, the pilot had recently began to get into flying again. On a medical certificate dated 4 months prior to the accident, the pilot reported 0 flight hours in the preceding 6 months. The pilot's flight time records were not located and the investigation could not establish the pilot's recent flying experience or instrument currency. According to the weather observations and reports, the tops of the overcast layer were 2,000 feet.

The National Transportation Safety Board determines the probable cause(s) of this accident as follows:

the pilot's loss of control due to spatial disorientation.

Full narrative available

Index for Apr2007 | Index of months

LAX07LA140

On April 29, 2007, at 0946 Pacific daylight time, a Cessna 182Q single engine airplane, N97287, was destroyed when it crashed into the Pacific Ocean about 1 mile offshore from Carlsbad, California. The owner/pilot was operating the airplane under the provisions of 14 CFR Part 91. Instrument meteorological conditions prevailed, and an instrument flight rules (IFR) flight plan had been filed. The private pilot and two passengers sustained fatal injuries. The cross-country personal flight departed McClellan-Palomar Airport (CRQ), Carlsbad, at 0943, with a planned destination of Phoenix, Arizona.

A review of the radio communications between CRQ air traffic control tower (ATCT) controllers and the pilot revealed CRQ ATCT cleared the pilot for takeoff. Shortly after takeoff, they gave him a frequency change, and he reported to the Southern California Terminal Radar Approach Control (SCT TRACON). At 0944, SCT TRACON advised the pilot to climb and maintain 5,000 feet, turn to a heading of 060 degrees, and proceed direct to the Julian very high frequency omni-directional radio range tactical air navigation aid (VORTAC). The pilot acknowledged the controller's instruction. At 0946, SCT TRACON asked, "Skylane two eight seven, uh, what are you doing?" The pilot did not acknowledge the controllers inquiry and no further communications were received by SCT TRACON from the pilot.

Cellular telephone text messaging records revealed one of the passengers texted the following excerpts to an acquaintance prior to and during the accident flight: "We are flying by instrument. Ocean fog. Storms coming to AZ. Should be bumpy. My phone still works up here. It's pure clouds. Just white."

Witnesses on a fishing boat, about 1.5 miles offshore of Carlsbad, reported seeing the airplane coming out of the overcast cloud layer in a steep nose down attitude just before impacting the ocean. The global positioning system (GPS) coordinates of the primary wreckage were 33 degrees 06.11 minutes north latitude and 117 degrees 21.43 minutes west longitude. The water depth at the accident site was approximately 300 feet. The two passengers were recovered from the water; the pilot and airplane were not recovered.

The closest official weather observation station was at CRQ, and the elevation of the weather observation station was 331 feet msl (mean sea level). An aviation routine weather report (METAR) for CRQ was issued at 0953, and reported the wind was calm; visibility 4 statute miles; an overcast cloud layer at 700 feet and haze; temperature 15 degrees Celsius; dew point 12 degrees Celsius; and an altimeter setting of 30.01 inches of Mercury. The CRQ air traffic controllers reported that the cloud layer tops were 2,000 feet at the time of the accident.

The pilot, age 70, held a private pilot certificate with single engine land and instrument airplane ratings. The private pilot certificate was issued in 1982, and the instrument rating was issued in 1986. The pilot was issued a third-class medical certificate on January 2, 2007, with a restriction for corrective lenses. According to the pilot's medical certificate application, he had accumulated 1,975 total flight hours, and 0 hours in the preceding 6 months. The pilot's logbook was not located.

According to acquaintances of the pilot, he had recently began to get into flying again. The pilot conducted a couple of "refresher" flights in February 2007. It was unknown how much flight time the pilot had accumulated since February.

The 1979-model Cessna 182Q, serial number 18267043, was a single engine, high wing, fixed tri-cycle landing gear, semi-monocoque design airplane. The airplane was powered by a six-cylinder Continental O-470-4 engine, serial number 286686R, rated at 225 horsepower. The airplane was configured to carry a maximum of four occupants. A review of the airplane's logbooks revealed the airplane underwent it's most recent annual inspection on September 27, 2006, at a total airframe time of 3,137 hours. No subsequent maintenance entries were noted in the aircraft logbooks.

Use your browsers 'back' function to return to synopsis
Return to Query Page